UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

WOODY TOMPKINS et al., :
: No. 5:14-cv-3737
            Plaintiffs, :
     v. :
:
FARMERS INSURANCE EXCHANGE, :
:
            Defendant. :
_____

**MEMORANDUM OPINION**

**Plaintiffs' Motion for Order Authorizing Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(b), ECF No. 28 – Granted in Part and Denied in Part**

**Joseph F. Leeson, Jr.**                                                                   **August 18, 2015**
**United States District Judge**

### I.    Introduction

       This matter comes before the Court concerning Plaintiffs' Motion for Order Authorizing Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(b), ECF No. 28. This case pertains to claims for alleged unpaid wages under the Fair Labor Standards Act ("FLSA") and the laws of Pennsylvania and Connecticut. For the reasons that follow, the Court grants Plaintiffs' Motion in part and denies Plaintiffs' Motion in part.

### II.    Background and Procedural History

       In June 2014, Plaintiffs Woodrow Tompkins, David Ammon, Gary Bassler, Anthony DeFrancesco, Scott Mumley, Carlos Navarro, and Adam Waychoff filed a complaint against

Defendant Farmers Insurance Exchange[1] alleging claims for unpaid wages on behalf of themselves and all similarly situated individuals under the Fair Labor Standards Act ("FLSA") and the laws of Pennsylvania and Connecticut. Compl. ¶ 1. ECF No. 1. Plaintiffs were formerly employed by Defendant either as Auto Physical Damage ("APD") Claims Representatives or in other, similar positions. Compl. ¶¶ 9-14; Answer 4-8, ECF No. 27. Plaintiffs' duties included conducting field inspections at body shops, tow yards, and other locations, preparing insurance estimates, and negotiating with repair facilities, policy-holders, and other third parties over waivers of claims. Compl. ¶ 17; Answer 10. Five of the Plaintiffs worked for Defendant in Pennsylvania, one worked for Defendant in Connecticut, and one worked for Defendant in Florida. Compl. ¶¶ 9-14; Answer 4-8. Plaintiffs allege that "before going 'on the clock' on any given day" and before the start of their scheduled shifts, they were required to perform the following tasks:

> start up their computers and access software applications on [Defendant's] website; obtain their assignments for the day; determine the locations they would need to visit and the order in which these visits would take place; map out their route; contact the body shops they would be visiting to confirm the subject vehicles were present and available; contact [Defendant's] customers to verify information about the subject vehicles' damage and coverage or collect any missing information; download forms to estimate damage to the subject vehicles; ensure they had all the necessary paperwork and equipment to complete their assigned work; and travel to their first location.

Compl. ¶ 18.

With respect to their FLSA claims, Plaintiffs plead their claims on a collective basis for "[a]ll persons Defendant[] employed as APD Claims Representatives, APD Claims Adjusters, APD Claims Representatives or Appraisers in any State except California, during any workweek

---

[1] The Complaint also named Farmers Group, Inc. as a defendant. Pursuant to a stipulation filed August 25, 2014, Plaintiffs agreed to dismiss all claims against Farmers Group, Inc. without prejudice. ECF No. 21.

in the maximum limitations period." Compl. ¶ 18. Plaintiffs allege that Defendant violated the FLSA

> by suffering and permitting Plaintiffs and the members of the collective to perform this "off-the-clock" pre-shift work, failing to properly track the pre-shift hours worked by Plaintiffs and the members of the collective, failing to require Plaintiffs and the members of the collective to submit their pre-shift time for compensation and failing to pay Plaintiffs and the members of the collective any wages for their pre-shift time.

Compl. ¶ 53. Plaintiffs further allege that "[a]lthough Plaintiffs and the [proposed] collective group members may have had different job titles or worked in different regions," this action may be properly maintained as a collective action because Plaintiffs and the members of the proposed group shared employers, were engaged in the same type of work, used the same computer systems and technologies, performed some or all of the pre-shift duties described in the complaint, and were governed by the same policies, practices, and systems with respect to timekeeping, compensation, work hours, overtime hours and wages, which Defendant centrally controlled. Comp. ¶ 30.

On January 13, 2015, Plaintiffs filed the motion under consideration here, seeking to conditionally certify this case as a collective action under the FLSA. Pls.' Mot. 1. Plaintiffs request that the Court grant conditional certification and authorize the dissemination of their proposed notice to a proposed collective action group that would include all persons whom Defendant employed as APD Claims Representatives, APD Claims Adjusters, and APD Claims Representatives or Appraisers in any state except California during any workweek since June 18, 2011. Pls.' Mem. Supp. Mot. 1.

### III.    Legal Standard – Motion for Conditional Certification under the FLSA

"Enacted in 1938, the FLSA, 29 U.S.C. § 201 et seq., was designed 'to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those

3

employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage.'" Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 192 (3d Cir. 2011) rev'd on other grounds, 133 S. Ct. 1523 (2013) (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 n. 18 (1945)). Among other things, the FLSA "requires all employers to pay their employees for all time worked." Reich v. Brenaman Elec. Serv., No. CIV.A. 95-CV-3737, 1997 WL 164235, at *2 (E.D. Pa. Mar. 28, 1997) (citing 29 U.S.C. § 206(a)).

 Under the collective action provision of the FLSA, an employee alleging an FLSA violation may bring an action on behalf of himself and other employees "similarly situated." 29 U.S.C. § 216(b). Unlike traditional class actions, however, each allegedly wronged employee must elect to join, or "opt in" to, the collective action and must do so by giving his or her consent in writing. See Gordon v. Maxim Healthcare Servs., Inc., No. CIV.A. 13-7175, 2014 WL 7008469, at *1 (E.D. Pa. Dec. 11, 2014). The FLSA "does not provide specific procedures by which potential plaintiffs may elect to opt in, but the Supreme Court has held that 'district courts have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs.'" Harrison v. DelGuerico's Wrecking & Salvage, Inc., 305 F.R.D. 85, 88 (E.D. Pa. 2015) (quoting Hoffmann–La Roche, Inc. v. Sperling, 493 U.S. 165, 169 (1989)).

 "In deciding whether a suit brought under § 216(b) may move forward as a collective action, courts typically employ a two-tiered analysis." Symczyk, 656 F.3d at 192. "During the initial phase, the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff." Id. "If the plaintiff carries her burden at this threshold stage, the court will 'conditionally certify' the collective action for the purposes of notice and pretrial discovery." Id. The Court of Appeals for the Third Circuit has observed that this conditional certification "is not really a certification."

See Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 536 (3d Cir. 2012). Rather, it is "only the district court's exercise of [its] discretionary power . . . to facilitate the sending of notice to potential class members" and "is neither necessary nor sufficient for the existence of a representative action under FLSA." Symczyk, 656 F.3d at 194 (quoting Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010)). Then, following this initial stage, "[a]fter discovery, and with the benefit of 'a much thicker record than it had at the notice stage,' [the] court . . . makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." Symczyk, 656 F.3d at 193 (quoting Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1261 (11th Cir. 2008)). If the plaintiff satisfies its burden at this second stage, "the case may proceed to trial as a collective action." Id.

At the first step of the inquiry, the plaintiff must make a "modest factual showing that the proposed recipients of opt-in notices are similarly situated." Id.  Under this standard, "a plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." Id. This is a "fairly lenient standard." Camesi v. Univ. of Pittsburgh Med. Ctr., 729 F.3d 239, 243 (3d Cir. 2013) (quoting Zavala v. Wal–Mart Stores Inc., 691 F.3d 527, 535 (3d Cir. 2012)) (internal quotation marks omitted).

**IV.     Analysis**

    **A.     Plaintiffs Have Satisfied the Burden Required for Conditional Certification.**

In accordance with the above, the Court addresses, at this first stage of the analysis, whether Plaintiffs have made a modest factual showing that they are similarly situated to the members of the proposed class. In support of their Motion, each of the seven Plaintiffs has provided a declaration stating, among other things, the following:

- "[b]efore [the Plaintiff] could go 'on the clock' each day, [he] had to perform a series of tasks necessary to [his] job";

- "Defendant did not include this 'off-the-clock' time in [his] daily hours worked or pay [him] any wages for it";

- Defendant "knew that [he] was doing a substantial amount of pre-shift work because [his] supervisors regularly communicated with [him] about this work, required [him] to complete this work[,] and had access to the databases showing [his] daily log-ins and completion of this work";

- and "[a]s a result of [his] experience working for Defendant and communicating with [his] co-workers and managers, [he] believe[s] that all of Defendant's APD Claims Representatives followed the same wage and hour procedures [he] did, used the same timekeeping and payroll systems [he] did; [and] performed the same pre-shift work [he] did and were not properly paid for this work."

Pls.' Mem. Supp. Mot. Exs. A-G, ECF Nos. 28-3 to 28-9.[2] On this basis, Plaintiffs contend that conditional certification would be appropriate "because they have introduced substantial proof that Defendant subjected [the proposed collective group's] members to a common policy or practice of requiring certain work to be done 'off-the-clock' before their scheduled shift without either including this time in their daily hours worked or paying them any wages for it." Pls.' Mem. Supp. Mot. 1.

---

[2]   The Plaintiffs' Declarations are nearly identical, and each Declaration contains the phrases quoted above.

Defendant contends that Plaintiffs have not met their burden for several reasons. First, Defendant argues that Plaintiffs' "vague and conclusory assertion that they 'had to' perform various tasks before they went 'on the clock'" provides no support for the existence of an allegedly unlawful employer policy. Def.'s Opp. Br. 17, ECF No. 35. Defendant observes that Plaintiffs "fail to identify any written policies, memoranda, or e-mails from their supervisors communicating an allegedly unlawful policy," and argues that Plaintiffs' "terse" declarations "fail to claim that such a policy existed" and "do not explain, much less factually support, why they supposedly 'had to' perform these tasks before going 'on the clock.'" Id. at 14-15.

Second, Defendant contends that Plaintiffs "provide no evidence that the alleged unlawful policy affected other employees." Id. at 17. Specifically, Defendant argues that Plaintiffs, in their declarations, "merely postulate that they 'believe' that 'all' APD [Claims Representatives] performed pre-shift work without compensation, 'as a result of [their] experience[s] working for Defendant and communicating with co-workers and managers.'" Id. Defendant maintains that this "cursory allegation" does not provide evidence of a factual nexus between Plaintiffs' experiences and those of all other APD Claims Representatives. Id. at 17-18.

Finally, Defendant contends that Plaintiffs "have made no showing that these alleged policies violated the FLSA," id. at 1, because they "provide no evidence to support that they, or other APD [Claims Representatives], were non-exempt employees who have FLSA rights to overtime or other compensation for pre-shift work," id. at 18.

The Court concludes that Plaintiffs have made a sufficient factual showing, at this stage of the proceedings, that they and the proposed collective action members are "similarly situated." Defendant acknowledges that Plaintiffs shared common duties and responsibilities related to providing assistance with the review and adjustment of automobile insurance claims, that

Defendant provided insurance services through a nationwide network of employees that included APD Claims Representatives and APD Claims Adjusters, and that the wages Defendant paid Plaintiffs and some or all of the potential members of the putative collective were determined in part by common methods. See Answer 11-13. Further, as noted above, in support of their allegations that Defendant had a practice or policy of requiring Plaintiffs and all other APD Claims Representatives to perform off-the-clock work without compensation, Plaintiffs have provided declarations from seven APD Claims Representatives in three states attesting that they and all other APD Claims Representatives, to their knowledge, were subject to the same wage and hour procedures, used the same timekeeping and payroll systems, performed the same pre-shift work, and were not properly paid for this work. See Gallagher v. Lackawanna Cnty., No. 3:CV-07-0912, 2008 WL 9375549, at *8 (M.D. Pa. May 30, 2008) (finding that plaintiffs "have easily made the modest factual showing necessary to warrant conditionally certifying their action" by submitting "declarations from eight employees in which each declared, under penalty of perjury," that he was required to perform uncompensated pre-shift work, because "[t]h[o]se declarations suffice[d] to sustain Plaintiffs' burden to show they are similarly situated to members of the putative collective action group and were all subject to the [defendant's] common business practices."). Although Defendant correctly points out that Plaintiffs' declarations are "terse" and "cookie-cutter" in nature, the declarations, "boilerplate-like as they are," see Dunkel v. Warrior Energy Servs., Inc., 304 F.R.D. 193, 201 (W.D. Pa. 2014), are sufficient to show – at this stage – that all seven named Plaintiffs and their fellow APD Claims Representatives, regardless of the state in which they worked, were affected in similar ways by Defendant's alleged policy or practice of requiring pre-shift work without compensation. See Morrow v. Cnty. of Montgomery, Pa., No. CIV.A. 13-1032, 2014 WL 348625, at *5 (E.D. Pa.

Jan. 31, 2014) (observing that "boilerplate declarations that employees engaged in pre-shift work and were never compensated for it [can] constitute[] the modest factual showing required for conditional certification" (citing Gallagher v. Lackawanna County, 2008 WL 9375549, at *8 (M.D. Pa. May 30, 2013))).

Defendant also correctly observes that Plaintiffs have failed to produce any memoranda, emails, or other writings attesting to the existence of the alleged policy. However, there is no requirement that Plaintiffs produce evidence of a written policy to support their claim. See, e.g., Maddy v. Gen. Elec. Co., 59 F. Supp. 3d 675, 683 (D.N.J. 2014) ("Courts in this Circuit have conditionally certified collective actions in many cases where plaintiffs allege that an unwritten policy or practice led to off-the-clock work . . . ."). The remainder of Defendant's arguments, including those concerning the exempt or non-exempt status of Plaintiffs and the proposed members, concern the merits of the dispute, which the Court is not called on to address at this juncture. See Mott v. Driveline Retail Merch., Inc., 23 F. Supp. 3d 483, 487 (E.D. Pa. 2014) (observing that "legality is not decided at this stage of the action"). Accordingly, for the above-stated reasons, the Court will conditionally certify a collective action consisting of all persons whom Defendant employed as an APD Claims Representative, APD Claims Adjuster, or APD Claims Appraiser in any state except California during any workweek commencing on or after January 13, 2012.[3]

### B.   Form of Notice and Opt-In Consent

"Once a court conditionally certifies a collective action, it possesses the discretion to provide court-facilitated notice." Harrison v. DelGuerico's Wrecking & Salvage, Inc., 305 F.R.D. 85, 89 (E.D. Pa. 2015) (citing Hoffmann–La Roche, 493 U.S. at 170)).

---

[3]   The Court addresses the issues of the appropriateness of this opt-in date and the geographic scope of the putative class in the section that follows.

> Such notice: (1) ensures that the employees receive accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate, and (2) serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cut off dates to expedite the disposition of the action. District courts have wide discretion in the implementation of notice to proposed plaintiffs.

Id. (citations and internal quotation marks omitted).

Defendant argues that if the Court grants Plaintiffs' Motion, the court-facilitated notice must be limited both geographically and temporally. Def.'s Opp. Br. 23-27. First, Defendant argues that Plaintiffs' notice should be limited geographically to APD Claims Representatives who worked in Pennsylvania, Connecticut, and Florida (i.e., the states in which the named Plaintiffs worked), and who reported to the same supervisors as the named Plaintiffs in the same Business Claims Offices. Def.'s Opp. Br. 27. Plaintiffs respond that Defendant "does not point out any actual differences in the pre-shift work that putative collective class members performed in any particular state or office, or under any particular supervisors, to justify the geographic limitation it seeks." Pls.' Reply Br. 16, ECF No. 40. Here, in view of Plaintiffs' modest factual showing that common job responsibilities and methods of compensation exist among all APD Claims Representatives regardless of the state in which they work, the Court finds that Plaintiffs have made a sufficient showing to obtain conditional certification of an FLSA class across the 49 states in which they seek to send notices. See Boyington v. Percheron Field Servs., LLC, No. CIV.A. 3:14-90, 2015 WL 3756330, at *2 (W.D. Pa. June 16, 2015) (granting a motion for conditional certification for "all persons who were employed as Right of Way Agents by Defendant" in view of the court's finding that Defendant's "wide geographical presence did not result in any significant disparities in the Right of Way Agents' job duties"). Any geographical differences among the members of the proposed group can be addressed at the second stage of the Court's inquiry. See Mott, 23 F. Supp. 3d at 490 (finding that a defendant's arguments

concerning variations among employees "with similar job descriptions subject to the same policies" were significant after discovery during the step-two analysis, but did not compel denial of conditional certification).

Second, Defendant argues that Plaintiffs' notice should be limited temporally to APD Claims Representatives who worked between January 13, 2012 and May 2013, which is the last month in which any of the named Plaintiffs worked for Defendant. Def.'s Opp. Br. 24. With respect to the starting date, Defendant observes that under the FLSA statute of limitations, at the absolute maximum, an individual must file a written consent to join an action no later than three years after the date of the alleged FLSA violation, plus any applicable tolling period. Id. at 26; see Titchenell v. Apria Healthcare Inc., No. CIV.A. 11-563, 2012 WL 3731341, at *2 (E.D. Pa. Aug. 29, 2012). Here, because Defendant agreed to a limited tolling of the statute of limitations starting on January 13, 2015, Defendant argues that the earliest possible date on which opt-in plaintiffs could file their written consent is January 13, 2015, and consequently the date for the earliest possible eligible claim would be three years prior to that date: January 13, 2012. Def.'s Opp. Br. 24. Accordingly, Defendant argues that Plaintiffs' proposed June 18, 2011 starting date for the window of notice "encompasses many untimely claims," since that date occurs over six months prior to the earliest possible eligible claim. Id. at 25.

With respect to the closing date for the notice, Defendant points out that by May 2013 all Plaintiffs in this action had ceased to be employees of Defendant, and argues that Plaintiffs can "proffer only pure speculation" concerning Defendant's policies and practices after that time. Id. Thus, according to Defendant, Plaintiffs cannot be similarly situated to APD Claims Representatives who did not commence employment with Defendant until after May 2013.

In their Reply Brief, Plaintiffs do not appear to contest Defendant's argument concerning the starting date for the notice, but they do contest Defendant's proposed ending date, arguing that the notice should be approved for all persons employed in the relevant group at any point within the past three years, regardless of when the named Plaintiffs ceased their employment with Defendant. Pls.' Reply Br. 14.

With respect to the starting date, the Court agrees with Defendant that Plaintiffs' proposed June 18, 2011 date would needlessly include untimely claims, and that the starting date for the notice should be January 13, 2012.[4] With respect to the closing date, the Court agrees with Plaintiffs that the time period should include all APD Claims Representatives who worked for Defendant in the past three years, regardless of whether their periods of employment overlapped with those of the named Plaintiffs. Any differences between the named Plaintiffs and members of the potential class who began working for Defendant after May 2013 can be addressed at the second stage of the Court's inquiry, following discovery.

### C. Plaintiffs Are Not Entitled to Equitable Tolling.

Plaintiffs argue that equity demands that the Court toll the statute of limitations in this action for the period of time that their Motion for conditional certification was pending before the Court. Pls.' Mem. Supp. Mot. 12. Defendant observes that Plaintiffs have failed to cite any

---

[4] In a stipulation filed January 29, 2015, the parties agreed that "[t]he statute of limitations for Plaintiffs' FLSA claims is tolled from January 13, 2015 until 45 days after the last brief concerning Plaintiffs' motion is filed, or the date the Court hears the motion, whichever occurs first." ECF No. 30. In view of the fact that this period has now expired, and in view of the Court's present decision to deny Plaintiffs' motion for additional, equitable tolling, it appears that the January 13, 2012 starting date will necessarily be over-inclusive. Nevertheless, the Court finds that at this stage it is not necessary to rule on the precise boundaries of the period of time encompassing eligible claims, and that the January 13, 2012 date is appropriate for the limited purposes of facilitating notice.

authority in this Circuit in support of their request and contends that under this Circuit's precedent, tolling is inappropriate under these circumstances. Def.'s Opp. Br. 26.

Equitable tolling is an "extraordinary" remedy that "can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has 'been prevented from filing in a timely manner due to sufficiently inequitable circumstances.'" Santos ex rel. Beato v. United States, 559 F.3d 189, 197 (3d Cir. 2009) (quoting Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 240 (3d Cir.1999)). "The equitable tolling doctrine is applicable to every federal statute of limitation, including the FLSA." Harrison v. DelGuerico's Wrecking & Salvage, Inc., 305 F.R.D. 85, 90 (E.D. Pa. 2015); see also Titchenell v. Apria Healthcare Inc., No. CIV.A. 11-563, 2012 WL 3731341, at *6 (E.D. Pa. Aug. 29, 2012) ("Although some courts have declined to apply equitable tolling [in FLSA cases], the greater weight of authority is that equitable tolling is permissible.").

The Third Circuit has identified "three principal situations in which equitable tolling is appropriate." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 591 (3d Cir. 2005). Those situations are:

> (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action, and that deception causes non-compliance with an applicable limitations provision; (2) where the plaintiff in some extraordinary way has been prevented from asserting his rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.

Id. In addition, this district has observed that "[c]ourts must be cautious about equitably tolling the FLSA limitations period especially where, as here, there are no allegations of wrongdoing on the part of the defendant." Titchenell, 2012 WL 3731341, at *7 (quoting Woodard v. FedEx Freight E., Inc., 250 F.R.D. 178, 194 (M.D. Pa. 2008)). "[I]n the average case in which the delay is attributable to the normal litigation process, courts have held that equitable tolling is not

appropriate." Id. Here, "[o]n the present state of the record, there are no extraordinary circumstances that justify equitably tolling the statute of limitations." See id.[5]

**V.      Conclusion**

For the reasons given, Plaintiffs' Motion for Order Authorizing Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(b) is granted in part and denied in part. Specifically, Plaintiffs' Motion is granted to the extent that the Court will conditionally certify a collective action defined as including all persons whom Defendant employed as an APD Claims Representative, APD Claims Adjuster, or APD Claims Appraiser in any state except California during any workweek commencing on or after January 13, 2012. The Court denies Plaintiffs' Motion to the extent that it seeks equitable tolling. The parties are directed to confer concerning the protocol for the production of contact information and in order to draft a court-facilitated notice and consent form consistent with this Opinion.[6] An appropriate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[5] Plaintiffs have also sought to exclude certain declarations filed by Defendant. Pls.' Reply Br. 11, ECF No. 40. In view of the Court's disposition of this matter, Plaintiffs' request is moot.
[6] The Court defers ruling on Plaintiffs' request that the Court order Defendant to produce each putative class member's last known telephone number and the last four digits of his or her Social Security number. Pls.' Mem. 11.