UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

WOODROW TOMPKINS; DAVID AMMON; :
GARY BASSLER; ANTHONY DEFRANCESCO; :
SCOTT MUMLEY; CARLOS NAVARRO; :
ADAM WAYCHOFF; JUSTIN ROUNDABUSH; :
MARK MORRILL; KEVIN HAYNES; and :
JEFF ROUNDTREE, individually and for all those :
similarly situated, :
                                                                     :
                                Plaintiffs, :
                                    v. :       No. 5:14-cv-3737
                                                                :
FARMERS INSURANCE EXCHANGE, :
                                                            :
                                Defendant. :
_____

**O P I N I O N**

**Plaintiffs' Unopposed Motion for Final Collective and Class Action Settlement Approval,
ECF No. 99 – Granted**

**Joseph F. Leeson, Jr.**                                                                         September 27, 2017
**United States District Judge**

**I.    Introduction**

       Plaintiffs Woodrow Tompkins, David Ammon, Gary Bassler, Anthony DeFrancesco, Scott Mumley, Carlos Navarro, Adam Waychoff, Justin Roudabush, Mark Morrill, Kevin Haynes, and Jeff Roundtree, on behalf of a putative class, and Defendant Farmers Insurance Exchange have negotiated and agreed to a collective and class settlement that will resolve Plaintiffs' claims under the Fair Labor Standards Act, 29 U.S.C. § 201-19 ("FLSA") and under the laws of Pennsylvania, Connecticut, New York, Illinois, Washington, and Oregon.

       The Court previously determined, on a preliminary basis, that the proposed class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) and that the proposed settlement agreement is fair, reasonable, and adequate, and the Court approved Plaintiffs' proposal to send notice to the members of the potential class and collective action. Plaintiffs now seek final approval of the class and collective action settlement. For the reasons that follow, the Court will grant the motion for final approval.

II. **Background**

In June 2014, Plaintiffs Woodrow Tompkins, David Ammon, Gary Bassler, Anthony DeFrancesco, Scott Mumley, Carlos Navarro, and Adam Waychoff filed a complaint against Farmers alleging that they and other similarly-situated auto claims representatives and field adjusters were required by Farmers to perform a variety of tasks, such as starting up their computers and obtaining work assignments, before beginning their shifts each day, and that they were not paid for this work. Compl. ¶¶ 1-18, ECF No.1. Plaintiffs filed their claims as a "collective action" under the Fair Labor Standards Act (FLSA), Compl. ¶¶ 44-56, and as a class action under the laws of Pennsylvania, Compl. ¶¶ 57-67, and Connecticut, Compl. ¶¶ 68-79.

In August 2015, upon Plaintiffs' motion, the Court approved the distribution of "opt-in" consent forms to potential members of the collective action. *See* Opinion & Order, ECF Nos. 43-44. By the end of December 2015, a total of about 200 persons had returned opt-in consent forms to join the litigation. *See* Opt-in Notices, ECF Nos. 48-53, 55.

In February 2016, Plaintiffs amended their complaint, adding Stephen Guy, Kevin Haynes, Greg Moore, Mark Morrill, Justin Roudabush, and Jeff Roundtree as named Plaintiffs and asserting additional state law claims under the laws of New York, Illinois, Washington, Oregon, and Colorado. Am. Compl., ECF No. 60.

On May 23, 2016, in response to a Motion for Partial Judgment on the Pleadings filed by Farmers, Plaintiffs voluntarily dismissed their Colorado claims as well as their request for certification of a proposed Colorado class, and they withdrew Greg Moore, a Coloradoan, as a named Plaintiff. *See* Pls.' Mem. Opp'n Def.'s Mot. 3, ECF No. 78-1. At that time, Plaintiffs also withdrew Stephen Guy as a Named Plaintiff. *Id.* at 10 n.2.

On May 31, 2016, the parties participated in a full-day mediation session with mediator David A. Rotman, at the conclusion of which they accepted the mediator's proposal to set the settlement value at $775,000. *See* Pls.' Mem. Supp. Mot. Final Approval [hereinafter Pls.' Mem.] Ex. C, Cohen Dec. ¶ 2, ECF No. 99-9.

In January 2017, upon Plaintiffs' unopposed motion, the Court made a preliminary determination that the proposed class action (composed of state law subclasses asserting claims under the laws of Connecticut, Illinois, New York, Oregon, Pennsylvania, and Washington) satisfied the applicable requirements of Federal of Civil Procedure Rule 23(a) and Rule 23(b)(3) and thus appeared to be suitable for certification. *See* Order, January 24, 2017, ¶¶ 2-3, ECF No. 96. The Court also made a preliminary determination that the proposed class action settlement terms were "fair, reasonable, and adequate" under Rule 23(e). *Id.* ¶ 6. The Court appointed the named Plaintiffs to serve as settlement class representatives, appointed settlement class counsel, approved the distribution to class members of a form notifying them of the class action lawsuit and of their rights to participate in, object to, or exclude themselves from the lawsuit, and appointed Simpluris, Inc., to distribute the notice and to administer claims under the settlement agreement. *Id.*¶¶ 4, 5, 10-13. The Court also made a preliminary determination that the parties to

the FLSA collective action had a bona fide dispute regarding the payment of wages and that the settlement of the FLSA claims was fair, adequate, and reasonable. *Id.* ¶ 8.

Following the mailing of the notice, one class member submitted a timely, valid request to be excluded from the settlement. *See* Pls.' Mem. Ex. D, Salinas Dec. ¶ 12, ECF No. 99-10. No objections to the settlement were filed. *Id.* ¶ 13.

Plaintiffs have now filed an unopposed motion for both (1) final approval of the class action settlement and (2) final approval of the FLSA collective action settlement. Pls.' Mot., ECF No. 99. After a fairness hearing with counsel for the parties on May 23, 2017, the motion for final approval is ripe for disposition.

## III.    The Settlement Agreement

The parties have agreed to settle this case for a total of $775,000.00. *See* Pls.' Mem. Ex. A, Settlement Agreement ¶ 1.14, ECF No. 99-4 [hereinafter "Settlement Agreement"]. The combined settlement (including both the FLSA collective action and the state law class actions) will benefit a total of 376 persons. Pls.' Mot. Ex. D., Salinas Dec. ¶ 8. The FLSA collective action incudes 208 Plaintiffs, including the 11 named Plaintiffs plus 197 persons who returned valid opt-in forms. *See id.* ¶ 6. The class action includes 199 total members, who are divided into the following six state subclasses: 12 Connecticut residents, 29 Oregon residents, 34 Pennsylvania residents, 39 Illinois residents, 40 New York residents, and 45 Washington residents. *Id.* ¶ 6.

Specifically, the six state law subclasses are defined as follows:

The "Connecticut Sub-Class," including: all current or former non-exempt employees employed by FIE as APD Claims Representatives, APD Claims Adjusters, or APD Claims Appraisers in the State of Connecticut from June 17, 2011, until the Preliminary Approval Date of January 23, 2017.

The "Illinois Sub-Class," including: all current or former non-exempt employees employed by FIE as APD Claims Representatives, APD Claims Adjusters, or APD Claims Appraisers in the State of Illinois from February 18, 2013, until the Preliminary Approval Date of January 23, 2017.

The "New York Sub-Class," including: all current or former non-exempt employees employed by FIE as APD Claims Representatives, APD Claims Adjusters, or APD Claims Appraisers in the State of New York from February 18, 2010 until the Preliminary Approval Date of January 23, 2017.

The "Oregon Sub-Class," including: all current or former non-exempt employees employed by FIE as APD Claims Representatives, APD Claims Adjusters, or APD Claims Appraisers in the State of Oregon from February 18, 2014 until the Preliminary Approval Date of January 23, 2017.

The "Pennsylvania Sub-Class," including: all current or former non-exempt employees employed by FIE as APD Claims Representatives, APD Claims Adjusters, or APD Claims Appraisers in the Commonwealth of Pennsylvania from June 17, 2011 until the Preliminary Approval Date of January 23, 2017.

The "Washington Sub-Class," including: all current or former non-exempt employees employed by FIE as APD Claims Representatives, APD Claims Adjusters, or APD Claims Appraisers in the State of Washington from February 18, 2013 until the Preliminary Approval Date of January 23, 2017.

*See* Settlement Agreement ¶1.25

Plaintiffs propose to divide the total $775,000.00 settlement amount as follows: a $414,211.72 net settlement fund to the FLSA Opt-In Plaintiffs and the Settlement Class Members; $48,500.00 to the eleven Named Plaintiffs as Service Awards; $271,250.00 in attorneys' fees to Class Counsel; a $26,038.28 cost reimbursement to Class Counsel; and $15,000.00 to Simpluris for class notice and settlement administration services. *Id*. ¶ 8.The Settlement Class Members will receive an average payment of about $1,100.50. *Id.*

The Court considers below, first, whether the proposed class action meets the requirements of Federal Rule of Civil Procedure 23; second, whether the proposed FLSA settlement is fair and adequate; and third, whether Plaintiffs' request for attorneys' fees and costs merits approval.

## IV. Plaintiffs have met Rule 23's requirements for certification of the settlement class and for approval of the state law class action settlement.

### A. Plaintiffs have met Rule 23(a) and (b)(3)'s requirements for certification of the settlement class.

A court may only grant final certification "if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) *as amended* (Jan. 16, 2009) (quoting *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 161 (1982)). For certification under Rule 23, the Class must satisfy the prerequisites of Rule 23(a) and one of Rule 23(b)'s three subparts. *Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 309–10. The party seeking class certification "bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012). In this case, the Court finds that the parties have satisfied the requirements for certification under Rule 23.

#### 1. The class satisfies the requirements of Rule 23(a).

Under Rule 23(a), a party seeking certification must demonstrate the following:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

First, Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Moreover where, as here, subclasses are created, Rule 23(c)(5) requires that each subclass be treated as a class. "This means that each subclass must independently meet the requirements of Rule 23 for maintenance of a class action." *Fanty v. Com. of Pa., Dep't of Pub. Welfare*, 551 F.2d 2, 7 n.4 (3d Cir. 1977) (quoting 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1790 at 191-92 (1972)). Thus, each of the six subclasses proposed by Plaintiffs must independently satisfy Rule 23(a)(1)'s numerosity requirement.

"No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001). This inquiry should be "particularly rigorous" when the putative class consists of fewer than forty members, and leading treatises have recognized the general rule that a class of twenty or fewer is usually insufficiently numerous. *See In re Modafinil Antitrust Litigation*, 837 F.3d 238, 250 (3d Cir. 2016). Relevant factors to consider when determining whether joinder would be impracticable include "judicial economy, the claimants' ability and motivation to litigate as joined plaintiffs, the financial resources of class members, the geographic dispersion of class members, the ability to identify future claimants, and whether the claims are for injunctive relief or for damages." *See id.* at 253.

As indicated above, three of the six proposed state law subclasses include fewer than forty members, with the Connecticut class including only twelve members. Nevertheless, consistent with the Court's preliminary determinations in its previous Order, ECF No. 96, the Court finds that because of the gains in judicial economy realized by litigating the individual parties' claims as part of this action and because the individual parties in this case lack the ability and motivation to pursue their litigation via joinder, the numerosity requirement is met for each subclass. In particular, in view of the fact that the maximum average value of the class members' claims is $5,586.00—a relatively low figure in comparison with the potential complexity of the issues involved—it is unlikely that the individual class members would have the ability or motivation to litigate individually or as joined plaintiffs. *See* Pls.' Mem. 12. Moreover, the individual class members are insurance adjusters or appraisers who likely have relatively limited financial resources to pursue these relatively low-value claims. *See id.* at 13. Finally, the twelve Connecticut class members live in eleven different cities or towns across eleven different postal zip codes, posing a further obstacle to joinder of their claims in particular. *See* Salinas Dec. ¶ 6.

Second, Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Here, there are common questions of law concerning whether Farmers paid class members all wages due under the respective state laws, and there are common questions of fact concerning whether the class members were required to perform pre-shift work. *See* Pls.' Mem. 15-16.

Third, Rule 23(a)(3) requires the claims of the representative plaintiffs to be "typical" of the claims of the class. Here, the Named Plaintiffs worked on a full-time basis in the same or similar positions to the class members (i.e., APD Claims Representative, APD Claims Adjuster, or APD Claims Appraiser). *See* Pls.' Mem. 17.

Fourth and finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The class members are adequately represented if (1) the interests of the class representative do not conflict with the class members' interests and (2) class counsel are experienced, vigorously prosecuted the action, and acted at arm's length from the defendant. *See In re Wafarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004). Here, Plaintiffs' counsel have significant experience in prosecuting class and collective actions, including multi-state wage and hour claims, *see* Pls.' Mem. 17-18, and the named Plaintiffs do not appear to have any interests incompatible with those of the class members.

In sum, the proposed state law classes meet Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation.

### 2. The class also satisfies the requirements of Rule 23(b)(3).

Rule 23(b)(3), under which Plaintiffs seek final class certification, requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

First, the "predominance" inquiry tests "whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 298 (3d Cir. 2011) (en banc). Here, as discussed above in connection with the Rule 23(a)(2) commonality criterion, there are questions of law and fact common to the class. In view of Plaintiffs' allegations that Farmers enforced common policies and procedures that required the class members, all of whom worked in similar positions, to perform pre-shift work, the Court finds that these commonalities predominate over any questions affecting individual class members.

Second, the superiority requirement asks the Court to consider (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D). With respect to this fourth criterion, in cases of settlement-only class

certifications, as here, "a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). As set forth above, in view of the relatively small amount recoverable by the individual class members and their relatively limited financial resources, the superiority element is satisfied in this case.

Therefore, because the prerequisites of Rule 23(a) and Rule 23(b)(3) are satisfied, the Court will certify the settlement class, including each of the six state-law subclasses.

**B.    Class Notice was the best notice practicable under the circumstances.**

"Before approving a proposed settlement, a court must also ensure that there has been compliance with Rule 23's provisions regarding . . . adequate notice to class members. *Phillips v. Philadelphia Hous. Auth.*, No. CIV.A. 00-4275, 2005 WL 1025151, at *3 n.2 (E.D. Pa. May 2, 2005). Specifically, Federal Rule 23(c)(2)(B) requires that the Court direct to class members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

The Court previously approved the notice process proposed by Plaintiffs. As described in the declaration provided by Jarrod Salinas of Simpluris, the claims administrator in this action, Simpluis followed the approved process. Pls.' Mem. Ex. D, Salinas Dec. Accordingly, the Court finds that Plaintiffs provided sufficient notice under Rule 23.

**C.    The terms of the class action settlement are "fair, reasonable, and adequate" under Rule 23(e).**

After considering the certification of the settlement class, the next step is to consider whether the terms of the settlement are "fair, reasonable, and adequate" under Rule 23(e). In doing so, the District Court "evaluates the agreement as a fiduciary for absent class members." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010). "The reason for judicial approval is to ensure that other unrepresented parties (absent class members) and the public interest are fairly treated by the settlement reached between the class representatives and the defendants." *Id.* "In cases of settlement classes, where district courts are certifying a class and approving a settlement in tandem, they should be "even 'more scrupulous than usual' when examining the fairness of the proposed settlement." *See In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir.), *as amended* (May 2, 2016) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004)).

The Third Circuit has held that there is a "presumption of fairness" where: (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. *Warfarin*, 391 F.3d at 535. Here, as discussed above, the parties reached the settlement after a full-day mediation session with an experienced mediator. *See* Cohen Dec. ¶ 2. Second, Farmers' produced a significant amount of discovery. *Id.* ¶ 3. Third, both parties were

represented by experienced counsel. Fourth, there were no objections and only one person requested exclusion from the class. Accordingly, the proposed settlement meets the four criteria required for the presumption of fairness to apply.[1]

After determining whether the initial presumption of fairness applies, the court is required to consider whether the proposed settlement is fair, reasonable, and adequate under the nine factors identified in *Girsh v. Jepson*:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d 153, 157 (3d Cir. 1975).

Here, the first factor—regarding the complexity, expense, and likely duration of the litigation—weighs in favor of settlement because, absent a negotiated settlement, this case would have required, initially, resolution of Farmers' motion for partial judgment on the pleadings, which sought dismissal of Plaintiffs' wage payment claims under the laws of Pennsylvania, Illinois, and Washington, as well as Plaintiffs' claims under New York law. *See* Def.'s Mot., ECF No. 75. Resolution of this motion would have required analysis of each of these states' laws, adding to the complexity and duration of the litigation. Moreover, following resolution of Farmers' motion, the case would have required "class-wide merits and damages discovery, likely including dozens of depositions and then on to contested motions for final FLSA certification (or decertification) . . . and summary judgment if not trial," all of which would have contributed significantly to the duration and expense of the litigation. *See* Pls.' Mem. 25.

The second factor also weighs in favor of settlement because the parties have not received any objections and have received only one request for exclusion from the class, thus indicating that the class members support the settlement.

The third factor requires the court to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)). As discussed above, the experienced counsel in this case conducted extensive discovery and a daylong mediation session before reaching settlement. Accordingly, this factor also weighs in favor of settlement.

---

[1] At least one court of this District has recognized that this presumption of fairness creates a paradox in light of the simultaneous *Wafarin Sodium* requirement of even more scrupulous review than usual for settlement classes, where district courts are certifying a class and approving a settlement in tandem. *See Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 760 n.4 (E.D. Pa. 2016).

With respect to the fourth and fifth factors, concerning the risks of establishing liability and damages, Farmers has pleaded several defenses, including that its policies and procedures did not require off-the-clock work and that it had no reason to know that the class members were performing such work. And, as discussed above, Farmers has filed motion for judgment on the pleadings, seeking dismissal of several of Plaintiffs' state law claims. The Court concludes that, in view of the risks of establishing liability in the face of these defenses, the fourth and fifth factors also weigh in favor of settlement.

With respect to the sixth factor, the Third Circuit has instructed that this factor is essentially "toothless" in settlement classes in light of the Supreme Court's statement in *Amchem Products, Inc. v. Windsor* that, in such cases, a district court need not inquire whether the case, if tried, would present intractable management problems. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 321 (3d Cir. 1998).

The seventh factor "is most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement." *Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 440. Farmers is a large corporation that likely could withstand a larger settlement. But "'in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the . . . settlement.'" *Sullivan*, 667 F.3d at 323 (quoting *Weber v. Gov't Empl. Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009)).

In evaluating the eighth and ninth *Girsh* factors, the court asks "whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin*, 391 F.3d at 538. Here, the typical class member's claim has a maximum value of $5,586, while, under the settlement agreement, the class members will receive an average payment of about $1,100, which is about 20% of the maximum claim value. *See* Pls.' Mem. 30. These factors appear to be, at best, neutral in this case. Although Plaintiffs have cited several cases involving securities litigation in which courts approved settlements with a lower percentage of the maximum claim value, Plaintiffs have not pointed to any cases involving wage-and-hour claims with comparable percentages of maximum claim value.

Nevertheless, despite the ambiguous results of factors eight and nine, the *Girsh* factors, on balance, favor approval of the Settlement Agreement, and the Court finds the terms to be fair, reasonable, and adequate.

V.      **The Court approves the FLSA Collective Action settlement.**

Having determining the fairness of the class action settlement, the Court next determines whether the proposed settlement of Plaintiffs' FLSA claims "'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Cuttic v. Crozer–Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).  A proposed settlement resolves a bona

fide dispute if its terms "reflect a reasonable compromise over issues, such as . . . back wages, that are actually in dispute." *Lynn's Food*, 679 F.2d at 1354. Here, the Settlement Agreement resolves a bona fide dispute between the parties. As discussed above, Farmers asserted several defenses to Plaintiffs' claims and the parties disagree on various legal issues.

Having determined that the Settlement Agreement resolves a bona fide dispute under the FLSA, the Court must conduct a two-part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the employees and (2) the settlement furthers the FLSA's implementation in the workplace. *See Mabry v. Hildebrandt*, No. 14-5525, 2015 WL 5025810, at *2 (E.D. Pa. Aug. 24, 2015); *McGee v. Ann's Choice, Inc.*, No. 12-cv-2664, 2014 WL 2514582, at *2 (E.D. Pa. June 4, 2014). In evaluating whether a settlement is "fair and reasonable" under the FLSA, courts in the Third Circuit have considered the *Girsh* factors as they do in the state law class context. *Waltz v. Aveda Transportation & Energy Servs. Inc.*, No. 4:16-cv-00469, 2017 WL 2907217, at *3 (M.D. Pa. July 7, 2017); *Brumley v. Camin Cargo Control, Inc.*, No. 08-1798, 2012 WL 1019337, at *4 (D.N.J. Mar. 26, 2012) (noting courts' use of *Girsh* factors in FLSA context in the absence of clear Third Circuit standards). Here, as discussed above, the *Girsh* factors favor approval of the proposed Settlement Agreement. Therefore, the Court finds that the proposed settlement of Plaintiffs' FLSA claims is fair and reasonable for the employees.

Lastly, the Court must consider whether the settlement furthers or frustrates the implementation of the FLSA in the workplace. The proposed Settlement Agreement here does not contain a confidentiality clause and thus avoids a common basis for rejecting a proposed FLSA collective settlement. *See, e.g.*, *Mabry*, 2015 WL 5025810, at *2–3. Nor does the Settlement contain the sort of impermissibly broad release provisions that courts have found invalid. *See, e.g.*, *Kraus*, 155 F. Supp. 3d at 532–33; *Bettger v. Crossmark, Inc.*, No. 13-2030, 2015 WL 279754, at *8–10 (M.D. Pa. Jan. 22, 2015). Therefore, the Court finds that the Settlement's terms do not impermissibly frustrate the FLSA's implementation.

The Settlement Agreement meets all the requirements for approval of a FLSA collective action and this Court grants final approval.[2]

---

[2] Plaintiffs also seek "final FLSA certification for settlement purposes," Pls.' Mem. 21, but as Farmers pointed out at the fairness hearing, this step is unnecessary for approval of the settlement. *See In re Wells Fargo Wage & Hour Employment Practices Litig. (No. III)*, 18 F. Supp. 3d 844, 853 (S.D. Tex. 2014) ("While there is a second stage in FLSA collective action cases during which the court may *decertify* the class if the plaintiffs are not similarly situated in light of information gathered during post-certification discovery, there was no need to reach the decertification stage here since the parties settled the case.").

**VI. The Court approves Plaintiffs' unopposed request for incentive, fee, and expense awards.**

**A. The requested service awards are appropriate in this case.**

The Third Circuit has explained that incentive awards to named plaintiffs in class actions exist "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation." *Sullivan*, 667 F.3d at 333 n.65. Where, as here, the proposed incentive award comes out of the common fund, independent of attorneys' fees, the court must "carefully review" the request for fairness to other class members. *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 770 (E.D. Pa. 2016). Factors courts use to evaluate the appropriateness of awards include the financial, reputational, and personal risks to the plaintiff; the degree to which the plaintiff was involved in discovery and other litigation responsibilities; the length of the litigation; and the degree to which the named plaintiff benefitted as a class member. *Hall v. Best Buy Co.*, 274 F.R.D. 154, 173 (E.D. Pa. 2011).

Here, Plaintiffs propose that of the eleven class representatives, two representatives should receive awards of $5,000; five representatives should receive awards of $4,500; and four representatives should receive awards of $4,000. Pls.' Supp. Br. 3, ECF No. 100.[3] The awards that Plaintiffs request fall within "the range of compensation" that courts have approved for individual incentive awards. *See In re Shop-Vac Mktg. & Sales Practices Litig.*, No. 4:12-md-2380, 2016 WL 7178421, at *4 (M.D. Pa. Dec. 9, 2016) (citing examples of incentive awards between $2,500 and $6,000). In this case, the reputational risk the Named Plaintiffs took by having their names attached to a class action suit they brought against their employer particularly justifies an award. Additionally, the named Plaintiffs have participated actively in this litigation: they produced and assisted in the review of documents, spoke with putative class members and encouraged their cooperation with this case, provided declarations in support of motions, and assisted with settlement negotiations. *See* Pls.' Supp. Br. 2. This involvement and personal risk justifies the awards which Plaintiffs seek.

**B. The requested attorneys' fees and costs are appropriate in this case.**

Plaintiffs seek $271,250 in attorneys' fees, equal to approximately 35% of the $775,000 Settlement Fund, as well $26,038.28 in litigation costs and expenses and a separate amount of $15,000 owed to the Simpluris firm for administering the settlement.

The Court may award fees and costs under the "common fund" doctrine, which holds that "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a

---

[3] Specifically, Plaintiffs propose the following amounts: Woodrow Tompkins ($5,000.00), Gary Bassler ($5,000.00), David Ammon ($4,500.00), Anthony DeFrancesco ($4,500.00), Scott Mumley ($4,500.00), Carlos Navarro ($4,500.00), Adam Waychoff ($4,500.00) Justin Roudabush ($4,000.00), Mark Morrill ($4,000.00), Kevin Haynes ($4,000.00) and Jeff Roundtree ($4,000.00).

fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 820 n.39 (3d Cir. 1995). In addition, with respect to the FLSA claims, the FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

In the Third Circuit, the percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure. *See Altnor*, 197 F. Supp. 3d at 765. This method is also the prevailing methodology used by courts in the Third Circuit in wage and hour cases. *Id.*

Courts generally consider seven factors to determine the reasonableness of the requested fees under the percentage-of-recovery method:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; and (7) awards in similar cases.

*Id.*

These factors justify the fees and costs requested. With respect to the first factor, the size of the fund created and number of people benefitted, "[a]s a general rule, as the size of a fund increases, the appropriate percentage to be awarded to counsel decreases." *In re Cendant Corp. Derivative Action Litigation*, 232 F. Supp. 2d 327, 337 (D.N.J. 2002). "This inverse relationship rests on the assumption that the increase in a recovery's size is often due to the size of the class and not the efforts of counsel." *Altnor*, 197 F. Supp. 3d at 765. This factor is neutral in the present case because, as discussed below, the requested percentage of recovery is near the midpoint of the spectrum of requests approved in this Circuit.

Second, the Court considers the presence or absence of objections to the fees requested. As discussed above, no potential Class Members have objected to the Settlement Agreement or the requested attorneys' fees and expenses. This factor favors approval of the fees as requested.

With respect to the third factor, the skill and efficiency of the attorneys, as discussed above, class counsel has substantial experience litigating class and collective action employment disputes. This factor also favors approval of the fees as requested.

The fourth factor considers the complexity and duration of the litigation. This litigation began in 2014 and, as discussed above, but for the settlement reached here, would have required resolution of Farmers' motion for judgment on the pleadings, which concerned several of Plaintiffs' state law claims, adding to the complexity of this matter. Moreover, class counsel had to analyze the wage and hour data of over two hundred persons, which involved complicated and time-consuming calculations of damages. *See Brumley*, 2012 WL 1019337, at *11 (analysis

of records for 112 plaintiffs to reach settlement of wage and hour case found to be complex). Furthermore, preparation of this case involved research of complex legal and factual issues and preparation for a full day's mediation session that led to the favorable outcome for the settlement class. This factor also favors approval of the requested fees.

Next, the Court considers the risk of nonpayment and the amount of time devoted to the case by counsel. Here, class counsel provided their representation on a contingent basis, without any promise or guarantee of recovery, *see* Pls.' Supp. Br. Ex. A, Cohen Dec. ¶ 21, ECF No. 100-1, and spent more than 753 hours on this case, including review of employee wage and hour data and preparing for and attending the mediation session that led to the settlement, *see* Pls.' Supp. Br. 5.

Lastly, the Court compares the requested award with awards in similar cases. "In this Circuit, the percentage of the recovery award in FLSA common fund cases ranges from roughly 20–45%." *Mabry*, 2015 WL 5025810, at *4. Overall, "a benchmark of one-third of the settlement fund is often appropriate to prevent a windfall to counsel." *Id. See Altnor*, 197 F. Supp. 3d at 768–69. Plaintiffs' request for a slightly higher figure of 35% is reasonable. This last factor weighs heavily in favor of approving the award and, weighing it with each of the factors discussed above, the Court grants the attorneys' fees as requested.[4]

Finally, "[i]n the Third Circuit, it is standard practice to reimburse litigation expenses in addition to granting fee awards." *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 658 (E.D. Pa. 2015). "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of his *reasonable* litigation expenses from that fund." *Lachance v. Harrington*, 965 F. Supp. 630, 651 (E.D. Pa. 1997). Here, class counsel state that they have incurred expenses in the amount of $26,038.28, and the Court grants this request as reasonable relative to the size of the common fund. The Court observes, however, that although attorneys Cohen and Zouras have provided a reasonably detailed description of their expenses in the total amount of $7,311.37, *see* Pls.' Supp. Br. Ex. A, Cohen Dec. ¶¶ 17-20, the attorneys for the Theirman Buck law firm have failed to describe, much less document, the expenses for which they seek reimbursement in the amount of $18,726.91, *see* Pls.' Supp. Br. Ex. B, Buck Dec. ¶ 5, ECF No. 100-2. This latter approach is disfavored, but the Court will grant the requested amount nevertheless. *See Lachance v. Harrington*, 965 F. Supp. 630, 651 (E.D. Pa. 1997) ("Ideally, expense petitions should contain not just the total expense requested for a particular service, but also a breakdown of the price per unit of the service and the number of units consumed, especially when those services are provided in-house.").

---

[4] Plaintiffs also contend that the requested fee is supported by a lodestar crosscheck, *see* Pls.' Supp. Br. 5-6, but as the court in *Altnor* observed, the relevance of this method "is increasingly challenged by the realities of today's legal practice." 197 F. Supp. 3d at 767. Specifically, "when many areas of legal practice today are no longer founded on standard hourly rates and more commonly driven by fixed fees, blended rates, and contingency fee agreements, the lodestar cross-check has become largely illusory." *Id.* (footnote omitted).

Finally, the Court approves the $15,000 fee to Simpluris. *See, e.g., Van Kempen v. Matheson Tri-Gas, Inc.*, No. 15-CV-00660-HSG, 2017 WL 3670787, at *9 (N.D. Cal. Aug. 25, 2017) (awarding costs to Simpluris and observing that courts "regularly award administrative costs associated with providing notice to the class").

## VII. Conclusion

For the foregoing reasons, the Court certifies the state law settlement class (including the six state law subclasses) and approves the terms of the proposed $775,000.00 settlement as fair and reasonable.

The Court approves payment of $48,500.00 in Enhancement Awards to Named Plaintiffs Woodrow Tompkins ($5,000.00), Gary Bassler ($5,000.00), David Ammon ($4,500.00), Anthony DeFrancesco ($4,500.00), Scott Mumley ($4,500.00), Carlos Navarro ($4,500.00), Adam Waychoff ($4,500.00) Justin Roudabush ($4,000.00), Mark Morrill ($4,000.00), Kevin Haynes ($4,000.00) and Jeff Roundtree ($4,000.00).

The Court approves the requested $271,250.00 attorneys' fee, the proposed $26,038.28 cost reimbursement, and the requested $15,000.00 settlement administration cost.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge